UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ROBERT JOSEPH BLANKENSHIP, JR., | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) ) Case No. 1:20 CV 170 SRW ) |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant(s). | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 17. Defendant filed a Brief in Support of the Answer. ECF No. 18. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

On August 11, 2017, Plaintiff Robert Blankenship protectively filed an application for supplemental security income ("SSI") under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 89. Plaintiff's application was denied on initial consideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 101.

Plaintiff and counsel appeared for a hearing on June 27, 2019. Tr. 32-70. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The

1

ALJ also heard testimony from vocational expert ("VE") Jeffery McGrowski. *Id*. On September 30, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 11-25. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. On June 11, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for

*providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations

are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**III.    The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 11, 2017, the application date. Tr. 13. Plaintiff has the severe impairments of "status-post left finger crush injury/fracture, lumbar degenerative disc disease, sacroiliitis, lumbar radiculopathy, chronic pain syndrome, cervical degenerative disc disease, chronic obstructive pulmonary disease (COPD), obstructive sleep apnea (OSA), post-traumatic stress disorder (PTSD), schizoaffective disorder, schizophrenia, antisocial personality disorder, and major depressive disorder." *Id*. Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 14. The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 416.967(a). Specifically, the [Plaintiff] is able to lift up to ten pounds occasionally. He is able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. He is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He is able to engage in frequent fingering with the left upper extremity. He should avoid all exposure to unprotected heights and use of dangerous moving machinery. He is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. He is able to perform work that is isolated from the public, with only occasional supervision and only occasional interaction [with] coworkers.

Tr. 16. At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work. Tr. 24. The ALJ further found Plaintiff was born on July 17, 1970, has at least a high school education, and is able to communicate in English. *Id*. The ALJ determined the transferability of

5

job skills was not an issue in this case because the Plaintiff's past relevant work was unskilled. *Id*. At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as weight tester (*Dictionary of Occupational Titles* ("*DOT*") No. 539.485-010, with 5,000 jobs in the national economy); stuffer of small objects (*DOT* No. 731.685-014, with 20,000 jobs in the national economy); and packer of medical supplies (*DOT* No. 559.687-014, with 5,000 jobs in the national economy). Tr. 24-25. The ALJ concluded Plaintiff was not under a disability since August 11, 2017, the date the application was filed. Tr. 25.

**IV.     Discussion**

Plaintiff challenges the ALJ's decision on one ground, arguing the RFC is not supported by substantial evidence. ECF No. 17. Specifically, Plaintiff contends the ALJ improperly determined that the medical opinion of his treating psychologist, Syed Sayeed, M.D., was not persuasive, but the non-examining opinion from state agency consultant, Dr. Barbara Markway, Ph.D., was somewhat persuasive. In response, the Commissioner argues that in assessing the RFC, the ALJ properly considered the supportability and consistency of their opinions, and the ALJ's conclusions were supported by substantial evidence. ECF No. 18.

For the following reasons, the Court finds the ALJ's decision is supported by substantial evidence in the record as a whole and is consistent with the Social Security Administration Regulations and case law.

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-

related physical and mental activities." SSR 96-8p, 1996 WL 374184 (July 2, 1996). "[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations by treating physicians and others, and an individual's own description of his limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (quotation and citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Nonetheless, there is no requirement that an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

An ALJ is not limited to considering only medical evidence in evaluating the RFC. *Cox*, 495 F.3d at 619; *see also Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [Plaintiff] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). The ALJ may consider a plaintiff's daily activities, subjective allegations, and any other evidence of record when developing the RFC. *Hartmann v. Berryhill*, No. 4:17-CV-002413-SPM, 2018 WL 4679737, at *6 (E.D. Mo. Sept. 28, 2018) (citing *Cox*, 495 F.3d at 619-20). Although the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox*, 495 F.3d at 620; 20 C.F.R. § 416.946.

In assessing the medical evidence, a treating physician's opinion "does not automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995). "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). When a treating physician's opinion is inconsistent with

7

the physician's clinical treatment notes or the medical evidence as a whole, they are entitled to less weight. *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011); *see also Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011); *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Perkins*, 648 F.3d at 997-98 (internal quotation marks and citation omitted).

For claims filed on or after March 27, 2017, the ALJ is not required to give "any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the Plaintiff's] medical sources." 20 C.F.R. § 416.920c(a).[1] In assessing the persuasiveness of a medical opinion, the most important factors to consider are the *supportability* and *consistency* of the opinion. § 416.920c(b)(2). As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." § 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." § 416.920c(c)(2). The ALJ may, but is not required to, articulate how she considers factors such as the medical source's relationship with the claimant and the medical source's specialization. § 416.920c(b)(3).

---

[1] 20 C.F.R. § 416.920c applies here because Plaintiff filed his application for SSI on August 11, 2017.

8

Here, the Court finds that the ALJ did not err in finding Dr. Sayeed's opinion unpersuasive or Dr. Markway's opinion somewhat persuasive. On January 19, 2018, Dr. Markway reviewed the medical evidence and submitted a psychiatric review technique (PRT) and mental RFC assessment. Tr. 22, 79-80, 84-86. In the PRT, Dr. Markway opined that Plaintiff had mild limitations in understanding, remembering, and applying information, and moderate limitations in interacting with others, concentrating, persisting, maintaining pace, and managing oneself. Tr. 22, 79. In the mental RFC assessment, Dr. Markway opined that Plaintiff retained the ability to perform simple tasks on a sustained basis away from the public and was able to carry out two-step commands, although he would struggle with more detailed instructions. Tr. 22, 84-86. The ALJ found Dr. Markway's assessment somewhat persuasive but determined "more specific limitations" were needed "based on the evidence at the hearing level." Tr. 22.

On March 12, 2019, Dr. Sayeed, Plaintiff's treating psychiatrist, submitted a two-page medical source statement in a checkbox format. Tr. 375-377. The ALJ acknowledged that Dr. Sayeed checked the boxes indicating Plaintiff had an "extreme limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," as well as "marked limitations in his ability to accept instructions and respond appropriate[ly] to criticism from supervisors." Tr. 22-23. Dr. Sayeed indicated Plaintiff would miss approximately 4 days per month from work and be off task 25% of the time. Tr. 22, 376-77.

The ALJ found Dr. Sayeed's medical source statement to be unpersuasive "because it is too extreme and is inconsistent with treatment notes from his office that most frequently indicate normal status examination[s], including being fully oriented, intact memory and fair to good insight and judgment." Tr. 23. Specifically, the ALJ cited to November 7, 2017, January 15,

9

2019, February 26, 2019, and May 7, 2019 Therapy Progress Notes from Dr. Sayeed's office, Bootheel Counsel Services, describing Plaintiff as having appropriate appearance, mood, behavior, thought content, and affect, with immediate, recent, and remote memory. Tr. 338-39, 650-51, 667-68, 682-83.

Plaintiff argues the same treatment notes cited by the ALJ from Bootheel Counsel Services actually undermine the ALJ's determination that Plaintiff had largely unremarkable mental status examinations. Plaintiff argues that while the November 7, 2017 Progress Note indicates improvement, Tr. 338-39, a January 30, 2018 Progress Note indicates decreased progress due to paranoia, poor insight, and poor judgment. Tr. 718-19. Plaintiff additionally cites to visits with Daniel Beck, a physician assistant supervised by Dr. Sayeed, in which Plaintiff was remarkable for hallucinations and paranoia. Tr. 651, 665, 667. Plaintiff argues these mental impairments were consistent throughout the record, and the ALJ inappropriately relied on select and sporadic unremarkable findings. Plaintiff also argues he underwent medication adjustments on several occasions, which indicated his mental condition was not well-controlled. Tr. 336, 650, 656, 667, 687, 694, 705, 711.

In carefully reviewing the record, the Court finds the ALJ sufficiently considered Dr. Sayeed's medical source statement and determined it was not consistent with his treatment notes. Tr. 21-23. The ALJ summarized Plaintiff's mental examinations from September 2017 to May 2019 and did not ignore his reported symptoms of hallucinations and paranoia. To the contrary, the ALJ noted Plaintiff's reports of hallucinations in July 2018, February 2019, April 2019, and May 2019, and paranoia in February 2019, April 2019, and May 2019. *Id.* The ALJ determined that despite these symptoms, Plaintiff's mental status examinations were mostly unremarkable

from January 2018 to May 2019, and, in general, he continued to improve with prescription medication from January 2019 to May 2019. Tr. 20-21.

The ALJ also discussed in detail Plaintiff's medication adjustments. Tr. 20. As the ALJ noted, his prescriptions helped alleviate Plaintiff's symptoms. For example, treatment records on October 10, 2017 reflect that after Plaintiff's Risperdal, Zoloft, and Trazodone dosages were increased, he reported feeling better. Tr. 336. On November 17, 2017, Plaintiff expressed satisfaction with the adjustments and again reported feeling better. Tr. 340. Treatment records on March 13, 2018 show that Plaintiff was on Trazodone, Zoloft, Risperidone, and Clonazepam, and he thought they were working well. Tr. 714-15. On May 4, 2018, after Plaintiff discontinued Trazodone and started Prazosin, Tr. 711, he reported continued satisfaction with his medications and stated his anxiety was not as bad, Tr. 708. On January 8, 2019 and February 12, 2019, Plaintiff reported his nightmares were controlled with Prazosin. Tr. 670, 685. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (internal quotation marks and citations omitted); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (upholding the ALJ's assessment of RFC because the plaintiff's medications stabilized her symptoms); *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (finding that when medication treatment improved plaintiff's mental condition, his disability was undermined); *Shurtz v. Saul*, No. 4:19 CV 1218 CDP, 2020 WL 6270745, at *6 (E.D. Mo. Oct. 26, 2020) (finding the ALJ's determination of no disability supported by substantial evidence, because the impairment was controlled by medication).

Further, as the ALJ discussed, the medical records do not reflect that more intensive care such as inpatient treatment or hospitalization was requested or recommended, or that his providers felt that prescription medication was not an effective treatment. Tr. 21. *See Black v.*

11

*Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (upholding the ALJ's decision that plaintiff was not disabled, because she never had surgery and relied on a conservative course of treatment such as medication); *Vanlue v. Astrue*, No. 4:11CV595 TIA, 2012 WL 4464797, at *14 (E.D. Mo. Sept. 26, 2012) (upholding the ALJ's determination that plaintiff's depression was not a severe impairment when the record showed that plaintiff "sought only minimal and conservative treatment such as medication and never required more aggressive forms of mental health treatment").

Moreover, as discussed by the ALJ, the progress notes for Plaintiff's mental health treatment reflect unremarkable mental status examinations in late 2017. Tr. 336, 338-39, 340-41. Plaintiff reported feeling better with medication adjustments. Tr. 338, 340. From 2018 to 2019, Plaintiff's mental status examinations remained unremarkable, except for fluctuating hallucinations and paranoia. Tr. 646-720. Plaintiff was often noted to possess coherent thought process, intact memory, appropriate speech, and appropriate behavior throughout his treatment. *Id.* Plaintiff's judgment and insight improved from poor to good in 2019. Tr. 651, 657, 663, 668, 673, 678, 683, 688. Although he generally suffered from anxiety and hallucinations in 2018, Plaintiff's mental status continued to improve. Tr. 693, 697, 701, 705, 708, 714, 711, 718. For example, on April 9, 2019, Plaintiff reported that his "[s]ymptoms improved over the past few months." Tr. 654. On March 12, 2019, Plaintiff reported feeling better with improved irritability. Tr. 660. On February 12, 2019 and February 26, 2019, Plaintiff reported that his visual and audial hallucinations were less distressing, Tr. 665, 670.

No treating practitioner at Bootheel Counseling Services, including Dr. Sayeed, indicated Plaintiff had limitations on his ability to perform a normal workday or perform certain activities. Tr. 646-720. *See, e.g.*, *Toland v. Colvin*, 761 F.3d 931, 935-36 (8th Cir. 2014) (finding that "ALJ

had sufficient reason to discount" treating provider's opinion where he "included limitations in the [medical source statement] that are not reflected in any treatment notes or medical records") (internal quotation marks and citation omitted). Additionally, it is noteworthy that Dr. Sayeed's medical source statement is in a checkbox format. *See e.g.*, *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (finding no error in decision to discount "cursory checklist statement" that "include[d] significant impairments and limitations that are absent from [provider's] treatment notes and [claimant's] medical records"); *Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012) (holding "a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration'" and that it is proper for an ALJ to discount a provider statement that "contained limitations that 'stand alone,' did not exist in the physician's treating notes, and were not corroborated through objective medical testing") (internal citations omitted).

The ALJ did not err simply because she weighed Dr. Sayeed's medical source statement differently than Plaintiff. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (upholding the ALJ's decision when the ALJ acknowledged the medical evidence the plaintiff focused upon but placed different and permissible weight on the evidence). It is the role of the ALJ to weigh and resolve conflicts in the medical evidence presented. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006). Here, the ALJ acknowledged Plaintiff's symptoms, including hallucinations and paranoia, considered the medical record, placed weight on the underlying opinions, and assessed Dr. Sayeed's medical source statement in light of the medical records as a whole.

Additionally, the ALJ appropriately found Dr. Markway's opinion to be somewhat persuasive. Plaintiff argues Dr. Markway's opinion should not have been used to support the

13

RFC because the opinion was based on an incomplete review of Plaintiff's medical records and could not override the treating opinion of Dr. Sayeed. The Court disagrees. Although Dr. Markway only reviewed medical evidence available before January 19, 2018, the date she submitted her written assessments, her opinion was not undermined by subsequent treatment notes. As discussed in detail above, January 2018 to May 2019 progress reports from Bootheel Counseling Services showed that Plaintiff had unremarkable mental status examinations despite reports of hallucinations and paranoia. Dr. Markway's opinion that Plaintiff had mild to moderate mental limitations but retained the ability to perform simple tasks on a sustained basis away from the public is consistent with the severity of Plaintiff's mental impairments as reflected by the medical record as a whole.

Further, the ALJ did not take Dr. Markway's opinion as conclusive. The ALJ assessed the objective medical evidence independently of Dr. Markway's opinion. The ALJ additionally considered Plaintiff's activities of daily living; medical opinions from medical sources; and a third-party function report from Plaintiff's ex-wife. Thus, in making her determination, the ALJ found more specific limitations than those indicated by Dr. Markway. Tr. 21-22.

Cathy Jo Eftink-Blankenship, Plaintiff's ex-wife who lives with him, submitted a third-party function report on September 29, 2017. Tr. 207-14. As the ALJ noted, Ms. Eftink-Blankenship reported Plaintiff is able to go out alone, grocery shop, prepare simple meals, manage his personal care, perform household chores, watch TV, handle money, and drive himself or Ms. Eftink-Blankenship to various appointments. Tr. 207-09. The ALJ also considered certain Plaintiff reported difficulties. For example, Ms. Eftink-Blankenship stated Plaintiff is not very sociable with people he doesn't know well, Tr. 208; he does not do well with

14

instructions or get along with authority figures, Tr. 212; and he does not handle stress or change well, Tr. 213. The ALJ found Ms. Eftink-Blankenship somewhat persuasive. Tr. 22.

Ms. Eftink-Blankenship's report on Plaintiff's ability to perform daily activities is also consistent with Plaintiff's own function report. Tr. 221- 231. As the ALJ summarized, Plaintiff reported he is able to drive a car, manage finances, shop for groceries and household necessities, go to doctor appointments regularly, watch TV, manage his personal care, prepare simple meals, and do household chores. Tr. 223-25, 230. Plaintiff also reported limitations with handling instructions, getting along with authorities and people he does not know well, as well as difficulties in handling stress or changes in his routine. Tr. 225-27. Based on Plaintiff's report, the ALJ found mild limitations in understanding, remembering, applying information, and adapting or managing oneself, and moderate limitation in interacting with others, and moderate limitations in concentration. Tr. 15.

Other medical evidence in the record also supports the ALJ's assessment of Plaintiff's mental impairments. For example, the ALJ cited to Plaintiff's May 9, 2019 physical examination from St. Francis Medical Center, in which Plaintiff reported improvements in his mood. Tr. 1039. The ALJ also noted that although Plaintiff complained of his irritability and inability to get along with people, numerous treatment notes routinely referred to him as cooperative and addressed no issues with him getting along with others. Tr. 453, 482, 558, 569, 951, 966, 1017, 1022, 1027, 1032, 1037, 1043, 1047, 1052, 1057, 1062.

The ALJ found that Plaintiff had the RFC to perform a range of sedentary work as defined in 20 CFR 416.967(a), subject to certain postural, environmental, and mental limitations. Tr. 16. In making this RFC determination, the ALJ sufficiently considered and accommodated Plaintiff's mental impairments. Specifically, the ALJ noted that "[b]ecause of [Plaintiff's]

15

reported difficulties with memory, attention, anxiety and being around people, [Plaintiff] is limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes," and "[b]ecause of increased anxiety being around people, [Plaintiff] is limited to work that is isolated from the public, with only occasional supervision and only occasional interaction with coworkers." Tr. 21. The ALJ then adopted the vocational expert's opinion, that given those limitations, Plaintiff is able to perform certain sedentary unskilled occupations such as weight tester, stuffer of small objects, and packer of medical supplies, which exist in significant numbers in the national economy. Tr. 25.

Based on a careful review of the records, the Court finds the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence. Thus, the ALJ's determination that Plaintiff had the alleged symptoms, but not the alleged severity, is supported by the medical records as a whole. The ALJ reasonably discounted Dr. Sayeed's opinion as inconsistent with the treatment notes from his own office. The ALJ also accommodated Plaintiff's mental status when assessing Plaintiff's RFC and properly adopted the vocational expert's opinion.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Robert Joseph Blankenship, Jr.'s Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 9th day of June, 2021.

*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE